IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

JAMES W. SLATER,

　　　　Movant,

v.                                    Case No. 2:04-cv-00391
                                      Case No. 2:01-cr-00160

UNITED STATES OF AMERICA,

　　　　Respondent.


## PROPOSED FINDINGS AND RECOMMENDATION

Pending is Movant, James W. Slater's (hereinafter "Defendant") Amended Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (docket sheet documents ## 90, 103 and 105).  This matter was referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

## PROCEDURAL HISTORY

On January 29, 1997, Defendant was taken into custody pursuant to a mental hygiene petition which had been filed by his son, William Slater, Jr.  The petition indicated that there were guns present in the home and that Defendant would probably resist arrest.

When the police arrived at Defendant's home in Sissonville, West Virginia, they used a public address system and the air horns on their cruisers to request that Defendant come outside.  (# 95,

Ex. B at 9). Defendant came out onto the front porch and was taken into custody. (Id.) Defendant was allowed to return into the house to retrieve a pair of shoes, and as a result, a protective sweep of his home was performed. The search produced a .22 caliber rifle in a closet in the master bedroom. (# 95, Ex. B at 9). The rifle was seized and a search warrant was obtained for the rest of the house and the detached garage. (Id. at 9-10).

While executing the search warrant, police officers discovered a large amount of marijuana in a locked room in the house. (Id. at 10). Officers also seized a scale, a drug ledger, and drug paraphernalia, as well as $15,000 in currency, and more firearms. (Id.)

In the garage, officers found an indoor marijuana growing operation, including 219 marijuana plants. (Id. at 10-11). In total, 37.315 kilograms of marijuana was seized from Defendant's home during the search.

On July 21, 2001, Defendant was indicted on one count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (# 1). On August 21, 2001, Defendant filed a motion to suppress the .22 caliber rifle as the fruit of an illegal search. (# 11). Before the district court could rule on the Motion to Suppress, however, Defendant elected to plead guilty to the felon in possession charge.

On November 7, 2001, Defendant entered a plea of guilty before the Honorable Charles H. Haden II, United States District Judge. (# 21). During the plea hearing, Defendant admitted that the .22 caliber rifle was his. (# 95, Ex. A at 10-11). In his colloquy with the district court, Defendant acknowledged that he understood the maximum penalty to which he exposed himself and the rights he was giving up by pleading guilty. (<u>Id.</u> at 12-15).

Defendant also confirmed that he knew that the probation department would undertake an independent investigation of his case and produce a recommended sentence, and that, as long as he was sentenced within the Guideline range, he would not be able to withdraw his guilty plea. (<u>Id.</u> at 15-16). Defendant further indicated that no one had made any promises or predictions to him regarding his possible sentence, and that his plea was voluntary. (<u>Id.</u> at 16).

Defendant was allowed to remain free on bond pending his sentencing hearing, which was initially scheduled for January 22, 2002. (<u>Id.</u> at 19-20). However, the hearing was ultimately continued until June 18, 2002, after the case was transferred to the Honorable John T. Copenhaver, Jr., United States District Judge, on March 4, 2002. (# 30).

While awaiting sentencing, on March 3, 2002, Defendant was arrested on a criminal complaint which charged him with intimidation of a federal witness. (<u>United States v. Slater</u>, Case

No. 2:02-mj-00029).  According to an affidavit of Bryan Stover of the Kanawha County Sheriff's Office, which was used to support the complaint, Defendant's ex-wife, Irene Slater, and his son, James W. Slater, Jr. (hereinafter "Will") told Deputy Sheriff Stover that Defendant had offered Will $1,000 in return for testifying that the seized marijuana belonged to Will.  According to the affidavit, Will admitted that he first accepted the money, but later the same day returned $820 to his father and told him he would not testify falsely.  The affidavit further indicates that Defendant allegedly also made statements to Irene Slater that "it would be a shame if anything happened to her granddaughter over this issue."  Mrs. Slater interpreted this statement as a threat against her.  Will also told Stover that, after he initially reported his father's actions to the police, Defendant threatened him with a .38 caliber pistol.

On March 6, 2002, a preliminary and detention hearing was held before the undersigned on the witness tampering charge.  The court heard testimony from Will, as well as three witnesses called on Defendant's behalf.  The undersigned found that there was probable cause for the charge.  Defendant was remanded to custody to await sentencing.  The witness tampering charge was eventually dropped.

The primary issue addressed at Defendant's sentencing hearing on June 18, 2002, was the ownership of the marijuana seized at the house in Sissonville.  Defendant claimed he had moved in with his

then-girlfriend in Cross Lanes and that the marijuana actually belonged to his son who was living in the Sissonville house at the time.

Sergeant Stover testified about the searches and the follow-up investigation. (# 95, Ex. B at 8-25). He testified that eight fingerprints matching Defendant's were found on the drug ledger seized from the home. (Id. at 12). Sergeant Stover also testified that Defendant had filed an answer to the State forfeiture petition claiming ownership of the currency seized during the search. (Id. at 16-17).

Defendant's wife, Teresa Slater, testified that Defendant had moved to her home in Cross Lanes in 1996, and that Will then moved to the house in Sissonville. (Id. at 54-55). Other family members and acquaintances of Defendant testified similarly. (Id. at 28-30, 41-42, 48-50 and 68).

The District Court rejected defendant's argument about the drug ownership, concluding that he did live in the house in Sissonville. (Id. at 75-76). Accordingly, the court attributed the entire quantity of marijuana to him as relevant conduct, which resulted in a four-level increase in Defendant's offense level for possession of a firearm in connection with a drug offense. (Id. at 76). The District Court also assessed a two-level enhancement for obstruction of justice based upon defendant's attempts to influence his son's testimony. (Id.) Defendant was denied a two-level

5

reduction for acceptance of responsibility. (<u>Id.</u> at 76-77). Consequently, Defendant's Guideline sentencing range was determined to be 135 to 168 months. (<u>Id.</u> at 77). Because the statutory maximum on the charge to which Defendant pled guilty was 10 years, however, the District Court indicated that Defendant would be sentenced to 120 months in prison. (<u>Id.</u>)

Before sentence could be imposed, Defendant objected on the basis that, during the plea negotiations, he had been lead to believe that the marijuana would not be part of his Federal prosecution. (<u>Id.</u> at 78-84). The District Court delayed imposition of sentence, and reconvened the hearing on June 25, 2002, to take testimony from Defendant and his prior counsel about the nature of their discussions. (<u>Id.</u> at 85).

The District Court ultimately concluded that there was no evidence of any promise being made to Defendant regarding the role of the marijuana in his Federal case. (<u>Id.</u> at 140-141). Nonetheless, the court delayed imposition of sentence again in order to allow Defendant to file a motion to withdraw his guilty plea. (<u>Id.</u> at 141-142). Defendant elected not to file such a motion, however, and the court ultimately imposed sentence on July 1, 2002. (<u>Id.</u> at 146-153).

Following the imposition of sentence, the Federal Public Defender's Office assumed responsibility over Defendant's case for the purpose of pursuing a direct appeal. In that appeal, the only

6

issue raised by appellate counsel related to the District Court's purported failure to make adequate factual findings to support the obstruction of justice enhancement. On July 3, 2003, the United States Court of Appeals for the Fourth Circuit affirmed Defendant's conviction and sentence. <u>United States v. Slater</u>, No. 02-4556, 70 Fed. Appx. 107 (4th Cir., July 16, 2003)(unpublished)(# 85), <u>cert. denied</u>, 540 U.S. 1042 (2003).

On April 22, 2004, Defendant filed the instant Motion to Vacate Sentence pursuant to 28 U.S.C. § 2255. (# 90). As grounds for relief, Defendant contends that, on the basis of "newly discovered" evidence, he has determined that the government withheld favorable evidence regarding misconduct in the State Police Forensic Laboratory, which he believes undermines the validity of his case. (<u>Id.</u> at 5, Ground One). Defendant also contends that his prosecution for violating 18 U.S.C. §§ 922(g)(1) and 924(a)(2) violates the protection of the Double Jeopardy Clause by convicting him of the same offense under two separate criminal statutes. (<u>Id.</u>, Ground Two).

Defendant further argues that his sentencing enhancement for obstruction of justice is erroneous in light of the "highly questionable" credibility of the government witness who testified regarding this action. (<u>Id.</u>, Ground Three). Defendant also alleges that his trial counsel coerced him into pleading guilty in order to conceal his lack of preparation for trial. (<u>Id.</u> at 6,

Ground Four).  Defendant also claims that his appellate counsel was ineffective for failing to raise what he characterizes as "winning issues on direct appeal."  (<u>Id.</u> at 6, ¶ 13).

Defendant has also attached to his Motion, a page designated as "Additional Grounds for § 2255."  On that page, Defendant lists as "Ground Five" his counsel's failure to advise him of a possible defense based upon an allegedly illegal search prior to the entry of his guilty plea.  Defendant contends that this omission renders his guilty plea involuntary.  (<u>Id.</u> at 8, Ground Five).  In "Ground Six," Defendant alleges that a key government witness made a statement indicating that Defendant's counsel had offered the witness money, which created a conflict of interest, and requires an evidentiary hearing to consider the impact of the alleged conflict.  (<u>Id.</u>, Ground Six).  Finally, in "Ground Seven," Defendant alleges that his constitutional rights were violated when the court excluded his wife from taking the stand in support of his defense during the sentencing hearing.  (<u>Id.</u>, Ground Seven).

On May 26, 2004, the United States filed a Response to Movant's section 2255 motion, arguing that Defendant is entitled to no relief on his claims.  (# 95).  Defendant has subsequently been permitted to amend his motion to include claims based upon the Supreme Court's rulings in <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004) and <u>United States v. Booker</u>, 125 S. Ct. 738 (2005).  Because these decisions are not applicable to Defendant's case, the United

8

States has not been required to respond to the amendments.

## ANALYSIS

**A.   Ground One - Non-disclosure of Police Lab misconduct.**

In Ground One of his section 2255 motion, Defendant claims that the government withheld favorable evidence from him.  (# 90 at 5, Ground One).  In the Memorandum of Points and Authorities in support of his section 2255 motion, Defendant claims that:

> "newly discovered" evidence reveals that the Government engaged in outrageous misconduct when they used the West Virginia State Police Crime Lab, specifically Sgt. Timothy White and Chemist Todd Owen McDaniel whose pattern and misconduct was insidious and extensive and completely undermined the validity of any forensic work performed or reported in the case at bar.

(# 91 at 1).  Defendant further states:

> [T]he question before this Court in Mr. Slater's argument is not whether the State Police and its employees violated the constitutional rights of drug defendants. The Courts have settled that question.  The question here is whether, given the fact that the United States Government used the West Virginia State Police Crime Lab, Officer Todd Owen McDaniel and Sgt. Timothy White, knowing that the Lab and its employees were involved and presently engaged in such egregious and outrageous misconduct did the United States commit reversible error by not informing Mr. Slater about the agency and its agents['] ongoing practice of fraud and deceit.

(Id. at 7).

It appears that Defendant is asserting a denial of his right to a fair trial, both by the alleged non-disclosure of this evidence, citing Brady v. Maryland, 373 U.S. 83 (1963), and because he was allegedly convicted on the basis of false evidence, citing Napue v. Illinois, 360 U.S. 264 (1959) and Giglio v. United States,

9

405 U.S. 150 (1972).  Defendant claims that he suffered prejudice because "it certainly had a major bearing on Mr. Slater's sentence where the trial court heavily relied upon the West Virginia State Police Lab's cooperation."  (# 91 at 13).

The United States' Response states as follows:

> This Court is well aware of the circumstances surrounding the discovery of improprieties at the West Virginia State Police Drug Laboratory that include the activities of Trooper T.O. McDaniel.  McDaniel subsequently pled guilty to fraud charges and was sentenced on those charges on January 4, 2001.  At that time, United States District Judge Copenhaver noted that there was no evidence following the extensive re-examination of the testing work of the laboratory that any person had been convicted or improperly incarcerated as a result of the irregularities in the testing program. Clearly, therefore, all the information regarding the irregularities at the State Police Drug Laboratory were fully matters of public knowledge at the time of defendant's sentencing.  If there were any objections to be made in defendant's case, based upon the activities of the State Police Drug Laboratory, all the information necessary to support such an objection were fully in place at the time of defendant's conviction and sentence.

(# 95 at 8).

The Response further states that Defendant has not identified how these circumstances affected his case.  According to the Response, neither Trooper McDaniel, nor Sergeant White, played any role in Defendant's prosecution, conviction or sentence, and Defendant's conviction did not significantly rely upon forensic testing.  (Id. at 9).  The United States asserts:

> Defendant does not suggest, in the instant Motion, that marijuana seized at his residence was, in fact, not marijuana.  Rather, at all the proceedings below, defendant alleged that the drugs seized did not belong to

him.  Any purported improprieties by the State Police
Crime Laboratory would be utterly irrelevant to the
ultimate determination of that issue.  Whether as
purportedly newly discovered evidence or as an implicit
claim of ineffective assistance of counsel based upon his
attorney's failure to raise this issue, defendant cannot
establish any grounds for collateral relief on this
claim.

(Id.)  The undersigned will address the non-disclosure of favorable

evidence and use of false evidence claims in turn.

### 1.  Non-disclosure of favorable evidence claim.

In <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963), the Supreme

Court held that "the suppression by the prosecution of evidence

favorable to an accused upon request violates due process where the

evidence is material either to guilt or to punishment, irrespective

of the good faith or bad faith of the prosecution."  Then, in

<u>United States v. Agurs</u>, 427 U.S. 97, 111 (1976), the Court held

that a prosecutor has a duty to disclose favorable evidence to the

defense, even if not requested, but that the prosecutor does not

have a "constitutional duty routinely to deliver his entire file to

defense counsel."

In order to state a valid <u>Brady</u> claim, the evidence must not

only be favorable to the defendant, it must also be material to the

verdict.  The Supreme Court addressed the issue of materiality in

<u>United States v. Bagley</u>, 473 U.S. 667,  (1985), and again in <u>Kyles

v. Whitley</u>, 514 U.S. 419 (1995).  In <u>Kyles</u>, the Court held that the

"touchstone of materiality is a 'reasonable probability' of a

different result . . . .  The question is not whether the defendant

11

would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." 514 U.S. at 434.   In essence, <u>Brady</u> constitutional error is demonstrated "by showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the [outcome]."  <u>Id.</u> at 435.

Defendant was indicted on July 20, 2001.  He pled guilty to one count of being a felon in possession of a firearm on November 7, 2001.  His sentence was ultimately imposed on July 1, 2002. Defendant had not even been indicted when Trooper McDaniel was sentenced for his misconduct at the State Police Crime Lab on January 4, 2001.  Thus, any evidence of misconduct at the lab, which Defendant has not actually connected to his case, was public knowledge and available to the defense throughout the criminal proceedings.  Thus, there was no <u>Brady</u> violation.

### 2.  Use of false evidence claim.

The Supreme Court has also held that it is a violation of due process to convict a defendant based upon false evidence. <u>Napue v. Illinois</u>, 360 U.S.  264 (1959).  Furthermore, the government is responsible for false testimony even if the prosecutor is unaware of the falsity.  <u>Giglio v. United States</u>, 405 U.S. 150 (1972); <u>Miller v. Pate</u>, 386 U.S. 1 (1967).  However, a conviction will not be set aside unless it is shown that the false evidence had a

material effect on the jury verdict.  A new trial will only be granted if "the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury."  Napue, 360 U.S. at 271; Giglio, 405 U.S. at 154.  Defendant has not demonstrated that any false evidence was used to obtain his conviction.  Thus, he cannot satisfy Napue or Giglio.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Defendant is entitled to no relief on his claims in Ground One of his motion.

**B.   Double Jeopardy Claim.**

In Ground Two of his motion, defendant claims that his conviction under both 18 U.S.C. §§ 922(g)(1) and 924(a)(2) violates the Double Jeopardy Clause of the Fifth Amendment.  (# 90 at 5, Ground Two).  Defendant does not elaborate on this claim in his Memorandum of Points and Authorities.  (# 91).

The United States Supreme Court addressed this issue in Blockburger v. United States, 284 U.S. 299 (1932).  "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not."  Id. at 304.

The United States' Response clarifies that "18 U.S.C. § 922(g)(1) defines the substantive conduct that violates the

statute. * * * Section 924(a)(2) is the penalty provision, which provides for the appropriate punishment under the circumstances of a conviction." (# 95 at 10). Section 924(a)(2) is simply cited to put the defendant on notice of his potential penalty for the single crime set forth in section 922(g)(1). Therefore, the undersigned proposes that the presiding District Judge **FIND** that Defendant has not demonstrated a violation of his right against double jeopardy under the Fifth Amendment, and that Defendant is entitled to no relief on Ground Two of his motion.

### C.  Obstruction of Justice enhancement.

In Ground Three of his motion, Defendant claims that the trial court's imposition of a two-level enhancement for obstruction of justice was "flatly erroneous" because the "government's star witness' testimony was highly questionable." (# 90 at 5, Ground Three). Defendant claims:

> The court acknowledged that it was reasonably well satisfied that the prosecution witnesses gave questionable testimony about very important aspects of this case against Mr. Slater about his attempt to influence a potential witness in his case. Additionally, newly discovered evidence likely would have foreclosed the United States from even offering the prosecution's witness's testimony, that it was quite likely that the sentencing court would have reached a different conclusion without the false evidence, and that Mr. Slater would not have received an enhancement for obstruction of justice.

(Id.)

Defendant further addressed this claim in his Memorandum of Points and Authorities. He states:

14

Mr. Slater points to the fact that the government relied heavily on false statements made by one of its star witnesses, William Slater Jr. which 1) the Honorable Mary E. Stanley (U.S. Magistrate Judge), found to be "**Definitely Questionable**" and 2) where William Slater Jr. later **recanted** his testimony in a sworn affidavit.

(# 91 at 14)(emphasis in original).

According to the Presentence Investigation Report:

On March 1, 2002, Mr. Slater was arrested by the Kanawha County Sheriff's Department, based upon a criminal complaint filed that date with United States Magistrate Judge Mary E. Stanley. The complaint charged Mr. Slater with intimidation of a federal witness, in violation of 18 U.S.C. § 1512(b)(1). On March 4, 2002, the Court heard the testimony of various witnesses and found probable cause the defendant had engaged in an attempt to influence a potential witness in his case. Specifically, the defendant was alleged to have offered his son, Will Slater, money to take personal responsibility and ownership of the marijuana s[e]ized from the defendant's residence on January 29, 1997. The defendant and his son have a long history of a tumultuous relationship. Will Slater alleged the defendant pointed an unloaded gun at him and made indirect threats. Although Judge Stanley stated she found problems with Will Slater's testimony, she did find probable cause that conversations had occurred between the defendant and his son about money being exchanged for the son's testimony at Mr. Slater's sentencing. The government moved to dismiss their complaint on March 25, 2002, at which time the defendant's bond was retroactively revoked as of March 1, 2002.

(Presentence Investigation Report at 5-6, ¶ 13). The district court adopted this finding at Defendant's sentencing.

As noted by the United States in its Response, Defendant challenged the obstruction enhancement in his direct appeal. The Fourth Circuit found that, because Defendant had not objected to the enhancement in his district court proceedings, it would only

review the ruling for plain error and found none.  <u>United States v.</u>
<u>Slater</u>, No. 02-4556 (4th Cir. July 16, 2003)(# 85).  The Fourth
Circuit specifically found that "Slater made no affirmative showing
that the information in the presentence report was inaccurate."
<u>Id.</u>  The United States further asserts that, at Defendant's
sentencing, the District Court "retained full authority to judge
the credibility of witnesses" and that the court "examined the
evidence in its entirety and determined that defendant had, in
fact, attempted to influence the testimony of his son."  (# 95 at
10-11).

     The undersigned proposes that the presiding District Judge
**FIND** that Defendant is barred from pursuing this claim by way of
collateral attack because he raised this issue in his direct
appeal, and the Fourth Circuit affirmed the district court's
findings.  Unless an intervening change in the law has justified
revisiting a prior judicial determination, the right to pursue
collateral relief through a section 2255 motion is not an
invitation to re-litigate issues already resolved.  <u>See</u>
<u>Boeckenhaupt v. United States</u>, 537 F.2d 1182, 1183 (4th Cir.
1976)(collateral attack cannot ordinarily be made on basis of
issues litigated on direct appeal).

### D.   Ground Four - Ineffective Assistance of Counsel for Failure to Investigate Witness Testimony.

     In Ground Four of his motion, Defendant claims that his
counsel "coerced Mr. Slater's guilty plea in order to conceal his

16

unpreparedness for trial . . . ."   (# 90 at 6, Ground Four).   In
further support of this claim, Defendant states:

> This court should vacate Mr. Slater's plea of guilty
> because defense counsel failed to investigate the facts
> and law surrounding this case.   Had counsel adequately
> investigated the facts, he would have discovered that Mr.
> Slater's son recanted his testimony before the grand jury
> and thereafter.   This is especially so where Mr. Slater's
> son, a key government witness: 1) failed a lie detector
> test; 2) the court acknowledged that Mr. Slater's son's
> testimony was highly questionable and 3) that Mr.
> Slater's hand writing analysis was found to have been
> inconclusive.

(Id.)   An allegation that an attorney conducted an inadequate
investigation does not warrant relief absent a proffer of the
specific favorable evidence the investigation would have brought
out.   See Bassette v. Thompson, 915 F.2d 932, 940-41 (4th Cir.
1991).   Furthermore, the reasonableness of an investigation made by
counsel must be evaluated under the totality of the circumstances
facing the attorney.   See Bunch v. Thompson, 949 F.2d 1354 (4th
Cir. 1991).

First, the undersigned notes that, according to the evidence
of record, the alleged intimidation of Defendant's son by Defendant
did not take place until after Defendant pled guilty on November 7,
2001.   Thus, there was no basis for Defendant's counsel up through
his plea hearing, Troy Giatras and Shannon Bland, to investigate
that matter.   Furthermore, to the extent that Defendant is claiming
that, but for the failure of his counsel to investigate Will
Slater's change in testimony, he would have elected to go to trial,

17

instead of pleading guilty, that assertion lacks merit.

During Defendant's plea hearing, he admitted that the .22 caliber rifle found in the house was his. Thus, there was a factual basis for his plea, which the court found to be knowing and voluntary. During the second session of Mr. Slater's sentencing proceeding on June 25, 2002, the presiding District Judge permitted Defendant time to determine whether he wished to move to withdraw his guilty plea. At the third session on July 1, 2002, Defendant indicated that he did not wish to file such a motion. Thus, Defendant cannot now challenge the voluntariness of, or the factual basis for, his plea.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Defendant has not demonstrated that his counsel's investigation of the facts used to support his conviction was unreasonable, or that Defendant's guilty plea was coerced or involuntary. Thus, the undersigned further proposes that the presiding District Judge **FIND** that Defendant is entitled to no relief on the claim in Ground Four of Defendant's motion.

### E. Ground Five - Failure to advise Defendant of defense based on illegal search and seizure.

In Ground Five of his motion, Defendant claims that his counsel's failure to advise him of a potential defense based upon the allegedly illegal search and seizure at his home prior to his guilty plea rendered his plea involuntary, and constituted

18

ineffective assistance of counsel.   (# 90 at 8, Ground Five).

The United States' Response notes that Defendant had filed a Motion to Suppress Evidence (# 12), based upon the circumstances surrounding the search of his home, and the United States had filed a response to the motion (# 17) prior to Defendant's guilty plea. The Response further states, "[c]learly, defendant had reason to know that the search issue had been raised but he nevertheless elected to plead guilty and waive that claim." (# 95 at 12).  The Response further asserts that the discovery of the weapon in Defendant's house was pursuant to a lawful protective sweep, and that the other items were located after the issuance of a lawful search warrant. (<u>Id.</u> at 13).  Thus, the United States asserts that "a legal challenge to the search was always a dubious strategy. Abandoning the claim in favor of a plea agreement was reasonable strategy by defendant's counsel." (<u>Id.</u>)

During the plea hearing, the court inquired of Defendant and his counsel.  His counsel stated that they had adequate time to prepare for the proceedings, and that they were satisfied that, if the case went to trial, there would be no meritorious legal defense that could be raised. (# 95, Ex. A at 17).  Defendant stated that he was satisfied with the quality of his counsel's representation up to that point, and that he was entering the guilty plea voluntarily and of his own free will. (<u>Id.</u> at 16).  Defendant has not demonstrated that he was unaware of the motion to suppress or

of a potential defense based upon an illegal search and seizure.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that, to the extent that Defendant is claiming that his guilty plea was involuntary, that claim lacks merit. The undersigned further proposes that the presiding District Judge **FIND** that Defendant has not shown that his counsel provided ineffective assistance in counseling Defendant to plead guilty, despite the pending Motion to Suppress Evidence. Thus, the undersigned further proposes that the presiding District Judge **FIND** that Defendant is entitled to no relief on the claims raised in Ground Five of his motion.

### F.   Ground Six - Claimed conflict of interest.

In Ground Six of his motion, Defendant claims that a "key government witness" made a statement that Defendant's counsel had offered him money, which he claims created a conflict of interest. (# 90 at 8, Ground Six). In his Memorandum of Points and Authorities, Defendant adds:

> If the court determines that an actual or potential conflict exists, it must either (i) disqualify the defense attorney if the conflict is so severe that no rational defendant could knowingly and intelligently desire that lawyer's representation, or (ii) secure a valid waiver under Curcio See, **Curcio, 680 F.2d at 888-90**.[1]   In Mr. Slater's case the simple fact that a key

---

[1]   Defendant is citing to United States v. Curcio, 680 F.2d 881 (2d Cir. 1982), in which the court found that counsel may engage in joint representation, despite a conflict of interest, where the defendants have made a knowing and intelligent waiver.

government witness gave a statement that Mr. Slater's defense attorney had offered him money is enough to create a conflict of interest between Mr. Slater and his defense counsel.   Thus, this issue alone calls for an evidentiary hearing.

(# 91 at 18).

The United States' Response states:

In response, the United States can only suggest that it finds this claim unsupported by any factual development in defendant's Memorandum in Support of Motion to Vacate Sentence. Defendant does not identify who the government witness was, which defense attorney offered money, or under what circumstances this occurred. The ultimate answer to this claim must remain, however, that defendant had the services of at least three attorneys during the course of his criminal prosecution. At no time during that process, however, did he seek to withdraw his guilty plea or otherwise suggest that he had been denied adequate representation. Unless defendant can offer some further factual support for this claim, it appears to be frivolous on its face.

(# 95 at 13-14).   The undersigned agrees.

Defendant has offered absolutely no factual support for this claim, and his bare allegations alone do not provide a basis for conducting an evidentiary hearing on this claim.   Defendant's responses at his plea hearing indicated that he was satisfied with the representation of his counsel at that time.   Defendant had different retained counsel for his sentencing, and appointed counsel for his direct appeal.   Defendant has not specified which attorney and which "key government witness" were allegedly involved.   Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Defendant has not demonstrated any actual conflict of interest by his counsel and, thus, he is entitled to no

21

relief on Ground Six of his motion.

   **G.   Ground Seven - Exclusion of Defendant's wife as witness.**

   In Ground Seven of his motion, Defendant asserts that he was "deprived his constitutional rights when the court excluded his wife from taking the stand in support of his defense during the sentencing hearing." (# 90 at 8, Ground Seven).  Defendant did not further address this claim in his Memorandum of Points and Authorities.  (# 91).

   The United States' Response contends that this claim also lacks factual support.  The Response states, "[t]he United States is, frankly, mystified by this allegation since a review of the sentencing transcript indicates clearly that his wife did testify at the sentencing hearing." (# 95 at 14).

   The undersigned has reviewed the sentencing transcripts and has determined that Defendant's wife, Teresa Slater, testified on Defendant's behalf during the first session of the sentencing proceeding on June 18, 2002.  (# 95, Ex. B at 53-66).  Defendant has not identified any specific testimony he claims his wife was not permitted to give.  Furthermore, it does not appear from the record that Defendant attempted to re-call his wife and was not permitted to do so.  Thus, there is no factual support for Defendant's claim.  Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Defendant is entitled to no relief on Ground Seven of his motion.

**H.    Ineffective assistance of appellate counsel.**

In passing in his initial section 2255 motion, Defendant claims that "some of the issues [in his section 2255 motion] are of a constitutional magnitude and should have been raised on direct appeal.  However, appellate counsel was ineffective for failure to present these winning issues on direct appeal." (# 90 at 6, ¶ 13). However, Defendant does not specify what "these winning issues" are in the motion, and he does not elaborate on this claim in his Memorandum of Points and Authorities.  (# 91).  Nor does it appear that the United States addressed this claim in its Response.  (# 95).

The undersigned proposes that the presiding District Judge **FIND** that, because Defendant has not identified any specific issues he believes his appellate counsel should have raised in his direct appeal, he has not demonstrated any actual prejudice that would entitle him to relief on this claim.

**I.    Defendant's <u>Blakely</u> and <u>Booker</u>-based claims.**

In his Memorandum in Support of his Amended Section 2255 Motion (# 104), Defendant has raised several claims based upon the United States Supreme Court's rulings in <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004).  The specific claims are as follows:

> I.    [Defendant's] conviction is infirm as it was the result of counsel's failure to protect [Defendant's] Fifth Amendment right to due process and his Sixth Amendment right to jury trial.

II.    [Defendant] is entitled to the application of
       <u>Blakely v. Washington</u> to his case without regard to
       its possible retroactivity under <u>Yates v. Aiken</u> and
       <u>Penry v. Lynaugh</u> because <u>Blakely</u> is an elaboration
       of an existing rule that is <u>Apprendi v. New Jersey</u>
       and was dictated by <u>Apprendi</u>.

III.   Alternatively, if <u>Blakely v. Washington</u> is a "new
       rule," it should be accorded retroactive
       application because it is a watershed development
       and requires the observance of procedures implicit
       in the concept of ordered liberty and as such is
       retroactive under <u>Teaque v. Lane</u>.

IV.    [Defendant] is entitled to resentencing without
       application of the Sentencing Guidelines, or
       alternatively, without application of any
       enhancements or increase in the base offense level
       except as was determined solely by the charges
       indicted and plead to, and if resentenced without
       reference to the Guidelines, the court should
       consider the abolition of parole in determining his
       non-Guideline sentence.

(# 104).  In his Memorandum of Supplemental Pleading (# 106) which

was filed after the Supreme Court's ruling in <u>United States v.

Booker</u>, 125 S. Ct. 738 (2005), Defendant adds the following claims:

I.     This court has the authority to apply <u>Booker</u>
       retroactively to [Defendant's] case, even in the
       <u>absence</u> of any Supreme Court ruling related to
       retroactivity.

II.    Trial court's imposition of a sentence based on
       facts neither found by a jury beyond a reasonable
       doubt nor admitted by the defendant was plain
       error.

III.   [Defendant] is entitled to the application of
       <u>Blakely</u> and <u>Booker</u> to his case based on arguments
       contained in his Amended 28 U.S.C. § 2255 Motion
       filed on 09/17/04.

(# 106).

In <u>Blakely v. Washington</u>, 124 S. Ct. 253 (2004), the Supreme Court held that: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."   The <u>Blakely</u> Court noted that the term "statutory maximum" as used for purposes of <u>Apprendi</u> means "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."

The <u>Blakely</u> decision was based upon the Court's interpretation of Washington statutory law.   However, because it was believed that the decision could have some impact on the Federal Sentencing Guidelines, the undersigned held Defendant's pending motions in abeyance until the Supreme Court made additional rulings.

On January 12, 2005, the Supreme Court decided <u>United States v. Booker</u>, 125 S. Ct. 738 (2005), which reaffirmed the Court's holding in <u>Apprendi</u>, applied the holding in <u>Blakely</u> to the Sentencing Guidelines, and held: "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt."   125 S. Ct. at 756.   The <u>Booker</u> holding applies "'to all cases on direct review or not yet final, with no exception for cases in which the new rule constitutes a "clear break" with the past.'" 125 S. Ct. at 769 (quoting <u>Griffith</u>

25

v. Kentucky, 479 U.S. 314, 328 (1987)).  Defendant's case has concluded direct review and is final.  Thus Booker does not apply, unless the Supreme Court rules that it is to be applied retroactively to cases on collateral review.

Seven Circuit Courts of Appeals have ruled that Booker does not apply retroactively to cases on collateral review.  In McReynolds v. United States, 397 F.3d 479, 480-81 (7th Cir.), cert. denied, 125 S. Ct. 2559 (2005), the Court held:

> Although the Supreme Court did not address the retroactivity question in *Booker*, its decision in *Schriro v. Summerlin*, ____ U.S. _____, 124 S. Ct. 2519, 159 L. Ed.2d 442 (2004), is all but conclusive on the point. *Summerlin* held that *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed.2d 556 (2002) -- which, like *Booker*, applied *Apprendi*'s principles to a particular subject -- is not retroactive on collateral review.
>
> *Ring* held, in reliance on *Apprendi*, that a defendant is entitled to a jury trial on all aggravating factors that may lead to the imposition of capital punishment. In *Summerlin* the Court concluded that *Ring* cannot be treated as a new substantive rule -- which is to say, a rule that "alters the range of conduct or the class of persons that the law punishes." ___ U.S. ___, 124 S. Ct. at 2523.  It observed that "*Ring* altered the range of permissible methods for determining whether a defendant's conduct is punishable [in a particular way], requiring that a jury rather than a judge find the essential facts bearing on punishment. Rules that allocate decisionmaking authority in this fashion are prototypical procedural rules." *Ibid*.  That is no less true of *Booker* -- or for that matter *Apprendi* itself. We held in *Curtis v. United States*, 294 F.3d 841, 843 (7th Cir. 2002), that *Apprendi* does not apply retroactively on collateral review, because it "is concerned with the identity of the decisionmaker, and the quantum of evidence required for a sentence, rather than with what primary conduct is unlawful." That, too, is equally true of *Booker*.  No conduct that was forbidden before *Booker* is permitted today; no maximum available sentence has been reduced.

26

The remedial portion of *Booker* drives the point home.  The Court held that the federal Sentencing Guidelines remain in force as written, although 18 U.S.C. § 3553(b)(1), which makes their application mandatory, no longer governs.  District judges must continue to follow their approach *as guidelines*, with appellate review to determine whether that task has been carried out reasonably. No primary conduct has been made lawful, and none of the many factors that affect sentences under the Sentencing Guidelines has been declared invalid.  Consequently, *Booker*, like *Apprendi* and *Ring*, must be treated as a procedural decision for purposes of retroactivity analysis.

* * *  The Court held in *DeStefano v. Woods*, 392 U.S. 631, and reiterated in *Summerlin*, that the choice between judges and juries as factfinders does not make such a fundamental difference; to the contrary, the Court stated in *Summerlin*, it is not clear which is more accurate.  ___ U.S. at ___, 124 S. Ct. at 2525.  What is more, *Booker* does not in the end move any decision from judge to jury, or change the burden of persuasion.  The remedial portion of *Booker* held that decisions about sentencing facts will continue to be made by judges, on the preponderance of the evidence, an approach that comports with the sixth amendment so long as the guideline system has some flexibility in application. As a practical matter, then, petitioners' sentences would be determined in the same way if they were sentenced today; the only change would be the degree of flexibility judges would enjoy in applying the guideline system.  That is not a "watershed" change that fundamentally improves the accuracy of the criminal process.  *See also Curtis*, 294 F.3d at 843-44.

We conclude, then, that *Booker* does not apply retroactively to criminal cases that became final before its release on January 12, 2005.  That date, rather than June 24, 2004, on which *Blakely v. Washington*, ___ U.S. ___, 124 S. Ct. 2531, 159 L. Ed.2d 403 (2004, came down, is the appropriate dividing line.

In <u>Green v. United States</u>, 397  F.3d 101, 103 (2d Cir. 2005), the Second Circuit held that "neither <u>Booker</u> nor <u>Blakely</u> appl[ies] retroactively to [a] collateral challenge."  In <u>Varela v. United</u>

27

States, 400 F.3d 864, 868 (11th Cir. 2005), the Eleventh Circuit held "that Booker's constitutional rule falls squarely under the category of new rules of criminal procedure that do not apply retroactively to a § 2255 on collateral review." In Humphress v. United States, 398 F.3d 855, 863 (6th Cir. 2005), pet. for cert. filed, No. 05-5130, the Sixth Circuit ruled that:

> We see no basis for concluding that the judicial factfinding addressed in *Booker* is either less accurate or creates a greater risk of punishing conduct the law does not reach than did the judicial factfinding addressed in *Ring*. The Supreme Court has never held that a new rule of criminal procedure falls within *Teague*'s second exception. *Beard [v. Banks]*, 124 S. Ct. [2504], 2513-14 [(2004)]. We hold that *Booker*'s rule does not either.

In United States v. Price, 400 F.3d 844, 848 (10th Cir. 2005), pet. for cert. filed, No. 04-10694, the Tenth Circuit held that Blakely was a new rule of criminal procedure that was not subject to retroactive application on collateral review. In Lloyd v. United States, 407 F.3d 608, 615-16 (3d Cir. 2005), the Third Circuit held that "Booker announced a rule that is 'new' and 'procedural,' but not 'watershed;'" thus it does not apply retroactively to § 2255 motions filed in cases which were final as of January 12, 2005. In Schardt v. Payne, 414 F.3d 1025 (9th Cir. 2005), the Ninth Circuit held that Blakely did not announce a watershed rule of criminal procedure, and quoted approvingly from Price.

Based on <u>McReynolds</u>, <u>Green</u>, <u>Varela</u>, <u>Humphress</u>, <u>Price</u>, <u>Rucker</u>, <u>Lloyd</u>, and <u>Schardt</u>, the undersigned proposes that the presiding District Judge **FIND** that Movant's conviction was final before <u>Blakely</u> and <u>Booker</u> were decided, and that neither <u>Blakely</u> nor <u>Booker</u> applies retroactively on collateral review.  Thus, the undersigned further proposes that the presiding District Judge **FIND** that Defendant is entitled to no relief on the claims raised in his Memorandum in Support of his Amended Section 2255 Motion (# 104) and his Memorandum of Supplemental Pleading (# 106).

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY** Defendant's section 2255 motion (# 90) and its amendments (## 104 and 106) in their entirety.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(e) of the Federal Rules of Criminal Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections), from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the

29

portions of the Proposed Findings Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Copenhaver, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Movant, James W. Slater, to counsel of record, and to Judge Copenhaver.

September 14, 2005
Date

Mary E. Stanley
United States Magistrate Judge

30